IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHANISE L. SLEDGE

    v.                     :   Civil Action No. DKC 20-3384

LIUNA LOCAL 11

                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this *pro se* employment discrimination case is a motion to dismiss filed by Defendant Liuna Local 11 ("Local 11"). (ECF No. 25).[1] The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I.   Factual Background

Plaintiff Shanise L. Sledge alleges that, between August and October 2016, her union, Defendant Local 11, discriminated against her because of her sex by failing to act on her requests for help preventing sexual harassment and retaliation by her co-workers. (*See* ECF Nos. 1, at 5; 1-2, ¶ 6). She suggests that Local 11 encouraged and fostered the hostile environment. (*Id.*, ¶ 7). She

---

[1] Defendant says Liuna is shorthand; its name is Construction and Master Laborers' Local Union 11. (ECF No. 25-1, at 3). Plaintiff alleges that Defendant is affiliated with The Laborers' International Union of North America. (ECF No. 1-2, ¶ 2).

further alleges that Local 11 refused to put her forward for other jobs. (*Id.*, ¶ 8).

Ms. Sledge was employed by Essex Construction as a Skilled General Laborer at the MGM National Casino project. (ECF No. 1-2, ¶¶ 4, 6). She alleges that she "was subjected to ongoing sexual harassment" by her second-line Supervisor and General Foreman, Dwayne Holland. (ECF No. 1-2, ¶ 6; 1-1, at 1 (Equal Employment Opportunity Commission ("EEOC") Determination)). In her EEOC charge, she alleged that Mr. Holland made inappropriate comments including telling her "how good [she] looked, [he] would love to see [her] lipstick on his penis, [and he] wanted to have sex with [her.]" (ECF No. 25-1, at 38).[2] "[A]fter she refused to work with [Mr. Holland] and requested reassignment, she was subjected to retaliation by Mr. Holland" and others. (ECF No. 1-2, ¶ 6). According to her EEOC charge, two other co-workers who drove to work with Mr. Holland called her lazy and a "spoiled princess," tried to write her up, and constantly told her "this was not the job for [her.]" (*Id.*). Ms. Sledge alleges that the Union "encouraged and fostered" this environment by refusing to stop

_____

[2] Ms. Sledge's EEOC charge is taken into consideration and treated as if it was incorporated into the complaint because it is "integral to [it] and authentic[.]" *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Cuffee v. Verizon Commc'ns, Inc.*, 755 F.Supp.2d 672, 676 & n.2 (D.Md. 2010) (considering defendant attached EEOC charge).

"open, active, and unashamed" sexual harassment, sex discrimination, and retaliation.  (ECF No. 1-2, ¶ 7).

Ms. Sledge complained to her union representative, Jhulio Medina, and requested reassignment but, according to her charge, "nothing was done."  (ECF No. 25-1, at 38; *see also* ECF Nos. 1-2, ¶¶ 6, 8; 1-1, at 1).  Her charge goes on to state that when her request for light duty to accommodate an injury was denied, Mr. Medina did not intervene, despite helping a male co-worker, Salis, when he had a similar problem.  (*See* ECF No. 25-1, at 38).  It also states that when the harassment and retaliation persisted, Ms. Sledge again complained to Mr. Medina and asked to be reassigned.  (*Id.*).  He told her she "was too emotional at work and this was [] construction and [she has] to have [a] thick skin." (*Id.*, at 38-39).  Within two days, she was fired.  (ECF Nos. 1-2, ¶ 4; 1-1, at 2; 25-1, at 39).  Afterwards, "the union failed to assist her in securing another position."  (ECF No. 1-2, ¶ 6; *see* ECF No. 25-1, at 39).

At some point during this period, Ms. Sledge was also "on the out of work list" and had an employee referral to work on the Kiewit Pipelines Project.  (ECF No. 1-2, ¶ 8).[3]  She alleges the Union "prevented" her from working on the project, finding problems

---

[3] Ms. Sledge spells Kiewit with one "t" and Local 11 spells it with two.  This opinion adopts Ms. Sledge's spelling.

with her candidacy where there likely were none while placing individuals with similar or less experience on the project. (*Id.*).

## II.  Procedural Background

Ms. Sledge filed a charge of discrimination with the EEOC on November 3, 2016.  (ECF No. 25-1, at 38).  She checked the box for race discrimination.  (*Id.*).  However, the charge includes the above-referenced allegations of harassment and retaliation by her co-workers and sex discrimination by the Union representative. (*Id.*, at 38-39).  The Commission initially issued a Determination in Ms. Sledge's favor, (ECF No. 1-1, at 1-2), before rescinding it because it concluded that "the sexual harassment was not ongoing when [Local 11] became aware of the conduct," (*id.*, at 3).

The EEOC then issued a Notice of Right to Sue letter on August 31, 2020.  (ECF No. 1, at 9).  Ms. Sledge filed this lawsuit on November 24, 2020, asserting claims under Title VII, Section 1981, and Section 1981a.  (ECF Nos. 1, at 4-5; 1-2, ¶ 3).[4]  She requests compensatory damages, attorney's fees, and costs.  (ECF No. 1, at 7).  Local 11 moved to dismiss on July 1, 2021.  (ECF No. 25). Despite requesting an extension, Ms. Sledge never filed a response.

---

[4] Section 1981a does not give rise to an independent cause of action.  *See Pollard v. Wawa Food Mkt.*, 366 F.Supp.2d 247 (E.D. Penn. 2005) ("[T]he language of § 1981a indicates that the statute provides additional remedies for plaintiffs who can otherwise show violations of Title VII, but does not create a new cause of action.").

### III. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

Unrepresented parties' pleadings are liberally construed and held to a less strict standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). Liberal construction means that courts will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it "does not mean overlooking the

5

pleading requirements[.]"  *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (citation omitted); *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

## IV. Analysis

Local 11 moves to dismiss Ms. Sledge's complaint for failure to exhaust and for failure to state a claim.  At the outset, it is necessary to identify Ms. Sledge's precise claims.  At core, her complaint is most reasonably construed to raise three sex discrimination claims under 42 U.S.C. § 2000e-2(c): (1) failure to act on requests to remedy sexual harassment and retaliation, (2) failure to refer for job openings, and (3) actively supporting sexual harassment and retaliation at Ms. Sledge's employer.  It is also reasonably construed to state (4) one retaliation claim for preventing Ms. Sledge from being reassigned or moving to another job because she complained about a hostile work environment.

At times, Local 11 structures its arguments as if Ms. Sledge asserts claims against it for conduct attributable to her employer, and even treats the Union as if it were her employer.  To be fair, Ms. Sledge checked boxes in the form complaint for failure to hire, unequal terms and conditions of employment, failure to promote, and termination, and wrote in sexual harassment.  (ECF No. 1, at 5).  There are also stray references to Local 11 as Ms. Sledge's employer.  (ECF Nos. 1-2, ¶¶ 6, 10; 25-1, at 38).  Nevertheless, the most natural reading of Ms. Sledge's complaint is as one

alleging that Local 11 violated its duty not to discriminate in its role as a union. (*See, e.g.*, ECF No. 1-2, ¶¶ 6 (the Union "failed to represent"), 9 ("failed to take prompt and effective remedial action"), 12 ("fail[ed] to protect")). Therefore, several of Local 11's arguments, such as that Ms. Sledge did not exhaust her failure-to-promote claim, are disregarded as moot.[5]

### A. Exhaustion

Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in federal court. The purpose of this exhaustion requirement is to put employers on notice to potential misconduct and afford them the opportunity to remedy it with the complaining employee more quickly and efficiently than litigation allows. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citation omitted).

A suit may not, however, present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC charge. *See Evans v. Techs. Applications & Serv.*

---

[5] Local 11 also incorrectly reads Ms. Sledge's complaint to assert claims for race discrimination.

*Co.*, 80 F.3d 954, 963–64 (4th Cir. 1996). Thus, where "administrative charges reference different time frames, actors, and [] conduct than the central factual allegations in [her] formal suit," the plaintiff has not exhausted her claims. *Chacko*, 429 F.3d at 506. She also may not have exhausted if "the administrative charge alleges one type of [conduct]—such as [] failure to promote—and the claim encompasses another type—such as [reductions] in pay and benefits." *Id.* at 509 (internal citation omitted).

Defendant argues that Ms. Sledge failed to exhaust (1) all sex discrimination claims against it grounded in underlying sexual harassment by her coworkers, and, if that argument fails, (2) "specific allegations regarding the Kiewit[] Pipelines Project." (ECF No. 25-1, at 3).

### 1.   Sex Discrimination Attributable to Local 11

Ms. Sledge exhausted her sex discrimination claims against Local 11. Her charge alleges sex discrimination by the Union. It states that Ms. Sledge "was subjected to sexual harassment" and that she complained about it, along with retaliation by her harassers, to her union representative who did nothing despite her request for reassignment. (ECF No. 25-1, at 38-39). As Defendant concedes, an unlawful motive can be inferred if the union "knows of actual discrimination and deliberately ignores a member's request[.]" *Murphy v. Adams*, No. 12-cv-1975-DKC, 2014 WL 3845804,

at *12 (D.Md. Aug. 4, 2014) (citing *Young-Smith v. Bayer Health Care, LLC*, 788 F.Supp.2d 792, 807 n.10 (N.D.Ind. 2011)).  In any case, the charge asserts that the Union representative assisted a similarly-situated male co-worker who needed reassignment around the same time and told Ms. Sledge she was "too emotional at work[.]"  (ECF No. 25-1, at 38).

Local 11's attempt to trip Ms. Sledge up because she checked the box for race discrimination rather than sex discrimination and alleged conclusorily that she was "discriminated against due her [her] race" is unpersuasive.  The cases it cites are distinguishable.  In all those cases, the plaintiff did not mention the pertinent type of discrimination in the narrative.  *E.g.*, *Byington v. NBRS Fin. Bank*, 903 F.Supp.2d 342, 350 (D.Md. 2012) ("[T]here is no reference to age discrimination in the narrative[.]"); *Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637, 640 (D.Md. 2002) ("[The plaintiff] did not mention anywhere in the charge, including in the factual narrative, that he was disabled.").

Local 11's other arguments fare no better.  That the alleged harassers were not agents of the Union is irrelevant given that the complaint does not allege it was the employer.  That the Union may not in fact have known about the underlying discrimination goes to the merits, not exhaustion.  Local 11 was on notice to,

9

and a reasonable investigation would have addressed, claims that the Union discriminated against Ms. Sledge because of her sex.

### 2.   Kiewit Pipelines Project

Local 11 contends that Ms. Sledge's Kiewit Pipelines Project allegations were not exhausted because they were not included in her charge and are not reasonably related to the allegations included.   It contends that the Pipelines Project allegations occurred in a different time period—after the period encompassed by the charge—and "likely involve[] different actors[.]"   (ECF No. 25-1, at 19).

The Kiewit Pipelines Project allegations are reasonably related to Ms. Sledge's charge.   Whether an allegation is reasonably related is a matter of degree.   A plaintiff need not specifically recite each event to the EEOC before filing a claim in federal court, *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019), but cannot later file claims based on entirely new factual bases, *see Chacko*, 429 F.3d at 506.   Although Ms. Sledge did not name the Pipelines Project, the crux of her charge against Local 11 is that its representative refused to help her be reassigned or refused to reassign her.   That may well have included referral to other jobs on other projects such as the Pipelines Project, and therefore may include the same actors.   Ms. Sledge also asserted that her union representative did not address her concerns when she was fired.   (ECF No. 25-1, at 39).   So long as the Union

10

prevented Ms. Sledge from working on the Pipelines Project at or around the time she was fired, it would have been reasonable to investigate referrals to or placements with the Pipelines Project based on Ms. Sledge's charge.

Local 11's motion to dismiss for failure to exhaust will be denied.

**B.    Failure to State a Claim**

**1.    Sex Discrimination**

Title VII makes it unlawful for labor unions:

> (1)  to  exclude  or  to  expel  from  its
> membership,  or  otherwise  to  discriminate
> against, any individual because of his race,
> color,  religion,  sex,  or  national  origin;
> (2) to . . . classify[,] or fail or refuse to
> refer for employment[,] any individual, in any
> way which would deprive or tend to deprive any
> individual  of  employment  opportunities,  or
> would limit such employment opportunities or
> otherwise adversely affect his status as an
> employee or as an applicant for employment,
> because  of  such  individual's  race,  color,
> religion, sex, or national origin; or (3) to
> cause  or  attempt  to  cause  an  employer  to
> discriminate  against  an  individual  in
> violation of this section.

42 U.S.C. § 2000e-2(c).[6]

**a)    Union Failure or Refusal to Pursue a Remedy for Discrimination**

"Under Subsection 2(c)(1), a labor union can be liable where it directly engages in discrimination[.]" *Murphy*, 2014 WL 3845804,

---

[6] Defendant does not address Ms. Sledge's Section 1981 claims or anywhere incorporate into its arguments her underlying claim for retaliation for complaining about sexual harassment.

at *11.   A common example of this type of claim is where a union
"deliberately refus[es] to pursue a sexual harassment grievance on
behalf of a plaintiff."  *Id.*, at *11 (collecting cases).   Refusal
to pursue a grievance is not the only type of claim allowed under
this subsection, however.   The statute compels unions not to
"discriminate against[] any individual because of" her sex and is
not limited to discrimination when deciding whether to file
grievances.  42 U.S.C. § 2000e-2(c)(1).   It is possible that Ms.
Sledge's reassignment-based claims fit better under Subsection
2000e-2(c)(2)  to  the  extent  the  Union  controlled  the
reassignments.   But if the Union had to petition the employer for
the reassignments, the claims belong under Subsection 2000e-
2(c)(1).   *See Johnson v. Int'l Longshoreman's Ass'n, Local 815
AFL-CIO*, 520 F.App'x 452, 454 (7th Cir. 2013) (unpublished)
(discussing whether the conduct in question was a union function).

As this court held in *Murphy*:

> The Fourth Circuit has not opined on the
> elements of a Title VII claim against a union
> for failure or refusal to pursue a remedy for
> discrimination.   In refusal cases, courts
> outside this district have required a
> plaintiff to demonstrate that: (1) she had a
> meritorious claim of discrimination; (2) she
> affirmatively requested that her union
> intervene to remedy the alleged
> discrimination; and (3) her union deliberately
> refused or failed to act on that request for
> discriminatory reasons.

2014 WL 3845804, at *12 (citations omitted).

Ms. Sledge satisfies all three elements.  Local 11 concedes that she pleaded a meritorious underlying claim for sexual harassment.  (ECF No. 25-1, at 23).  She alleges that she requested her union representative help her get reassigned to a different role so that she wouldn't have to endure ongoing harassment and retaliation.  And she alleges that her union representative, Mr. Medina, "did nothing" in response and otherwise conducted himself in ways that support an inference of sex bias: helping similarly situated male co-workers and telling Ms. Sledge she was "too emotional[.]"  (ECF No. 25-1, at 38).

### b) Union Failure or Refusal to Refer

Under Subsection 2(c)(2) a labor union can be held liable if it (1) "fail[s] or refuse[s] to refer for employment any individual," (2) "in any way which would deprive or tend to deprive [that] individual of employment opportunities, or would limit [or adversely affect] [her] employment opportunities" (3) "because of" her sex.  42 U.S.C. § 2000e-2(c)(1).  Ms. Sledge clearly satisfies these requirements to the extent her reassignment allegations belong under this Subsection, and also satisfies them for the Kiewit Pipelines Project, although that is a closer call.[7]

---

[7] Local 11 proposes a different set of elements.  (ECF No. 25-1, at 25-26).  The elements it puts forward were designed to establish a *prima facie* case at summary judgment and its requirement that the plaintiff allege facts about comparators is inapplicable here.

Ms. Sledge can be construed to allege that the Union failed or refused to refer her for employment when it refused to support her alleged reassignment requests, to the extent the Union controlled reassignments, as discussed above. This element is also satisfied for the Kiewit Pipelines Project because she says the Union "prevented" her from working there. (ECF No. 1-2, ¶ 8). There is little doubt that Ms. Sledge's employment opportunities were allegedly harmed because she had to endure continued sexual harassment and retaliation when she wasn't reassigned and then was terminated. In addition, she was on the out of work list when she was prevented from working on the Pipelines Project. Her allegations can support an inference that Mr. Medina acted with a sex-based motive for the reasons discussed above. As to the Pipelines Project, it is not as clear because Ms. Sledge does not identify who at the Union prevented her from working on the Project. Liberally construing her *pro se* complaint and drawing all inferences in Ms. Sledge's favor, however, it can be inferred that Mr. Medina was also involved in preventing Ms. Sledge from working on the Pipeline Project and the inference of sex bias carries over from Ms. Sledge's other allegations.

**c)   Union Instigation of or Support for Discrimination**

Under Subsection 2(c)(3), a labor union can be liable where it "instigates or actively supports" an employer's discrimination. *Murphy*, 2014 WL 3845804, at *11 (cleaned up) (quoting *Hubbell v.*

*World Kitchen, LLC*, 717 F.Supp.2d 494, 501 (W.D.Pa. 2010)).
"[A]ctive participation" by the union is required; "passive
acquiescence" is not enough.  *McCollum v. Int'l Brotherhood of
Boilermakers*, No. 03-cv-0355, 2004 WL 595184, at *3 (M.D.N.C. Mar.
10, 2004) (Citation omitted); *see also Beck-Pell v. Sheet Metal
Workers Local #100*, No. 17-cv-2329-PWG, 2019 WL 3841935, at *6
(D.Md. Aug. 15, 2019) ("[U]nions do not have a duty [to]
investigate or ameliorate employer discrimination[.]" (citation
omitted)).  Ms. Sledge has not adequately pleaded that Local 11
instigated or supported discrimination by Ms. Sledge's employer.
She alleges only that Local 11 "encouraged and fostered a hostile
work environment" by "refus[ing] to stop" the sexual harassment,
sex discrimination, and retaliation.  (ECF No. 1-2, ¶ 7).

  **2.  Retaliation**

  To plead retaliation, Ms. Sledge must allege (1) "that she
engaged in protected activity, [(2)] that the labor organization
took adverse action against her, and [(3)] that a causal
relationship existed between the protected activity and the
adverse activity." *Beck-Pell*, 2019 WL 3841935, at *7 (cleaned up)
(quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250
(4th Cir. 2015)).

  Ms. Sledge pleads a claim for retaliation.  She "complained"
to her Union representative, Mr. Medina, about the sexual
harassment and retaliation she faced from Mr. Holland and his

friends.  (ECF No. 1-1, at 1).  Contrary to Local 11's contention, Ms. Sledge alleges that Mr. Medina knew about the underlying reasons for her complaints well before the day preceding her termination.  (*See, e.g.*, *id.*).  Mr. Medina then failed to take action on Ms. Sledge's request for help being reassigned or to be reassigned by the Union.  He also may have prevented Ms. Sledge from being referred to work at the Kiewit Pipelines Project.[8]  (Ms. Sledge does not claim that the Union retaliated against her by terminating her because that act was taken by her employer).  Last, Mr. Medina told Ms. Sledge when he refused to help her be reassigned, or to reassign her, that "this was [] construction and [she has] to have [a] thick skin."  (ECF No. 25-1, at 39).  Drawing all inferences in Ms. Sledge's favor, this statement could demonstrate animus against Ms. Sledge for complaining.

Local 11's motion to dismiss for failure to state a claim will be granted as to Ms. Sledge's claim that Local 11 supported sexual harassment and retaliation at her workplace.  Its motion will be denied as to Ms. Sledge's claims that Local 11 discriminated against her by failing to intervene when she complained about sexual harassment and retaliation and failing to refer her for another job, and retaliated against her for complaining about her worksite conditions.

---

[8] Local 11 does not assert that these actions are not adverse.

**V.    Conclusion**

For the foregoing reasons, Local 11's motion to dismiss will be granted in part and denied in part.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
